# EXHIBIT B

3/1/2021 1:50 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 51024670
By: Courtni Gilbert
Filed: 3/1/2021 1:50 PM

*2021-11686 / Court: 157*

CAUSE NO. _____

| | | |
|---|---|---|
| **ROBERT WHITE, NIC KAMISH,** | § | **IN THE DISTRICT COURT OF** |
| **LACY GREJCHA, DESTANI HARRIS,** | § | |
| **BUKOLA SIMEON, KENA BURAS,** | § | |
| **GWEN MAYBERRY, TONYA REYES-** | § | |
| **DICKERSON, KAYLA BUTLER AND** | § | |
| **CHERYL FREESTONE** | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| **NRG TEXAS POWER, ET UX** | § | |
| | § | |
| **Defendants** | § | **_____ JUDICIAL DISTRICT** |

<u>**PLAINTIFFS' ORIGINAL PETITION**</u>

To the Honorable Judge of this Court:

       COME NOW, Robert White, Nic Kamish, Lacy Grejcha, Destani Harris, Bukola Simeon,

Kena Buras, Gwen Mayberry, Tonya Reyes-Dickerson, Kayla Butler and Cheryl Freestone, et al,

Plaintiffs herein and file this their Original Petition against the named Defendants, hereinafter

sometimes referred to as the "Power Generators" and the "Power Transmission/Distribution

Companies", and respectfully show the court the following:

### I.    NATURE OF ACTION

1.   This suit is brought on behalf of Texans who suffered loss of life and/or who sustained personal

     injuries, damage to their property and/or other losses during the February 2021 cold weather

     because the named Power Generators and Power Transmission/Distribution Companies failed

     to properly prepare for such cold weather and/or otherwise failed to properly conduct their

     operations, and as a result failed to supply Plaintiffs, and more than 4 million other Texas

     households, with safe and reliable electricity during this their time of greatest need.

2.   The Power Generators own and operate power generation facilities where their electricity is

     generated through various means, and that electricity is ultimately distributed into a "service

     area". Power    Generators    contract    and/or    otherwise    arrange    with    the    Power

1

Certified Document Number: 94580698 - Page 1 of 19

Transmission/Distribution Companies for transmission and distribution of their respective generated power to be transmitted through transmission and distribution lines that ultimately results in electricity delivered to the customer.



The Electric Reliability Council of Texas (ERCOT) manages the delivery of that electricity. ERCOT's sole function is "power dispatch", or the scheduling and managing how electricity will flow through the network. ERCOT does not itself generate any electrical power. The process is subject to the operating constraints of generation systems and individual power lines. This lawsuit was mandated because of the Power Generators' and the Power Transmission/Distribution Companies' individual and collective failures to implement long known and recommended measures to weatherize their power generating facilities/stations and equipment to protect against foreseeable cold weather to avoid a catastrophe just like Texans suffered in February 2021 and because of their individual and collection operational failures during the February 2021 cold weather.

## II.  DISCOVERY PLAN

3.  Pursuant to TEX. R. CIV. P. 190.4, Plaintiffs intend to conduct discovery in this case under a Level 3 Discovery Plan.

---

[1] Simple diagram of electricity grids in North America. 26 December 2008. United States Department of Energy, SVG version by User: J Messerly - http://www.ferc.gov/industries/electric/indus-act/reliability/blackout/ch1-3.pdf Page 13. Title: "Final Report on the August 14, 2003 Blackout in the United States and Canada" Dated April 2004. Accessed on 2010-12-25.

Certified Document Number: 94580698 - Page 2 of 19

## II. PARTIES

### *Plaintiffs*

4. Plaintiffs are individuals who bring this action arising out of loss of life, and/or who sustained personal injuries and/or damage to their property or other losses during the February 2021 cold weather because the named Power Generators and Power Transmission/Distributions Companies wholly failed to supply them with safe and reliable electricity during their time of greatest need. Each individual Plaintiff herein is listed in the spreadsheet attached hereto and fully incorporated by reference as **Exhibit A**.

### *Defendants*

5. Defendants are power generators that use wind, solar, methane gas, biomass, hydroelectricity or other processes to generate electricity; and/or are owners and/or operators of transmission and/or distribution lines that move electricity from a power station where electricity is generated at high voltage in order to transmit large amounts to consuming areas; transformers that perform functions along the transmission route, such as voltage step-up/step-down and frequency regulations, called "substations;" and/or distributors of electricity transmitted from power stations through substations before finally being delivered to consumers by use of electrical wires called "distribution lines".

6. Service of process information for all Defendants is listed on the spreadsheet attached hereto as **Exhibit B**. All Defendants are authorized to conduct business in Texas and conduct the business of power generation and/or transmission/distribution of electricity in the Texas County shown on the spreadsheet.

7. Wherever it is alleged that a Defendant did or failed to do a particular act and/or omission, it is meant that Defendant, acting individually, or by and through agents, officers, directors, servants, and employees, either did or failed to do that particular act and/or omission, in the course and scope of his employment, agency contract with the Defendant, and in furtherance

Certified Document Number: 94580698 - Page 3 of 19

of Defendant's business. Therefore, under the doctrine of respondeat superior, each Defendant is vicariously liable for the acts and/or omissions of its agents, officers, directors, servants, and employees in the course and scope of their employment, further outlined elsewhere in this Petition and incorporated by reference here fully. Pursuant to Texas Rule of Civil Procedure 28, any entity doing business under an assumed name may be sued in its assumed name for the purpose of enforcing against it a substantive right, and Plaintiffs demand that the Power Generators and the Power Transmission/Distribution Companies answer in their correct name, if different than that outlined above.

### III. JURISDICTION AND VENUE

8. Jurisdiction is proper because the amount in controversy exceeds the minimum jurisdictional limit of this Court.

9. Personal jurisdiction over the Power Generators and Power Transmission/Distribution Companies is proper in the state of Texas.

10. The incident complained of herein occurred in the state of Texas.

11. The Power Generators and the Power Transmission/Distribution Companies all conduct business in the state of Texas.

12. Plaintiffs' claims against the Power Generators and the Power/Distribution Companies arise out of and relate to their contacts with the State of Texas.

13. There are sufficient minimum contacts between the Power Generators and the Power Transmission/Distribution Companies and the state of Texas.

    a. Each of the Defendants purposefully availed itself of the privilege of conducting business in the state of Texas.

    b. On information and belief, the Defendants have filed affirmative claims in the courts of the state of Texas.

Certified Document Number: 94580698 - Page 4 of 19

4

Certified Document Number: 94580698 - Page 5 of 19

   c.  On information and belief, the Defendants have filed affirmative claims seeking damages
       to property owned in the State of Texas.

   d.  On information and belief, the Defendants have employees in the state of Texas.

14. Given the foregoing contacts, the Defendants can reasonably anticipate being sued in the state
    of Texas.

15. This Court's exercise of personal jurisdiction over the Defendants will not offend traditional
    notions of fair play and substantial justice.  Accordingly, this Court has specific personal
    jurisdiction over all of the Defendants named herein.

16. Further, venue in Harris County is proper pursuant to Tex. Civ. Prac. Rem. Code Sec. 15.002,
    as Harris County is the county where much of the property losses, injuries and death occurred
    is the county in which Plaintiffs resided at the time of the accrual of the cause of action, and is
    the county where some or all of the wrongful acts of the Defendants giving rise to Plaintiffs'
    claims occurred.  Plaintiffs having established proper venue against one, some, or all of the
    Defendants, give this Court venue over all of the Defendants in all claims or actions arising
    out of the same incident/occurrence complained of herein.

## V.   STATEMENT REGARDING MONETARY RELIEF SOUGHT

17. Pursuant to Texas Rule of Civil Procedure 47(c), Plaintiffs seek monetary relief in excess of
    $1 million.

## VI.   FACTS

18. On February 13, 2021, a winter storm developed off the coast of the Pacific Northwest that the
    Weather Channel unofficially named "Winter Storm Uri" because of its expected impact on
    the country.    Long  before  this  date,  the  Power  Generators  and  the  Power
    Transmission/Distribution Companies knew they could not weather a winter storm of this size
    and magnitude, and that in the worst-case scenario, they would not be able to supply power to
    Texas consumers.

5

19. In fact, temperatures plunged down into the low teens in Texas and stayed there for days. Texas power grids were not able to sustain the higher-than-normal energy and heating demand from residential and business users, and the grids failed. The Electric Reliability Council of Texas (ERCOT) ordered rolling blackouts in a kneejerk effort to manage the problem which the Defendants knew all too well would occur because the Defendants had failed to prepare their facilities and equipment for such an event by "weatherizing" them, even though similar events had repeatedly occurred. Texas also experienced disruptive cold weather events in 1983, 2003, 2006, 2008, 2011, and 2014. The catastrophic failure in February 2021 resulted in approximately 4.3 million power outages that affected 14.9 million Texans by putting them in the precarious position of having no power to heat and light their homes in cold weather conditions that lasted for days. That failure also resulted in little or no city-supplied water, or food and drinking water, or the need to boil water for drinking if it was available.

20. The Power Generators and the Power Transmission/Distribution Companies knew well in advance of the storm that they could not weather a winter storm of this size and magnitude, and that in the worst-case scenario, they would not be able to supply power to consumers, and enormous amounts of property damage, illness and death would result.

21. In advance of the storm, on February 12, 2021, Texas Governor Greg Abbott issued a disaster declaration for *all 254 counties* in Texas and followed that decree by requesting a federal emergency declaration on February 13, 2021. All of these official actions were well in advance of the February 15, 2021 National Weather Service's winter storm warning for the entire state of Texas. Every Texas Power Generator and Power Transmission/Distribution Company knew, well in advance of the development of this winter storm, that a failure to be able to provide continuous power to Texans in a storm of this scale involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and even though the Power Generators and Power Transmission/Distribution Companies had actual, subjective

Certified Document Number: 94580698 - Page 7 of 19

awareness of the risk involved, nevertheless proceeded with conscious indifference to the rights, safety, and/or welfare of Texas consumers.

22. As a matter of fact, after investigating the Texas power grid in the wake of the cold weather event of 1989, the Public Utilities Commission of Texas made the following recommendations[2]:

    a. All utilities should ensure that they incorporate the lessons learned during December of 1989 into the design of new facilities in order to ensure their reliability in extreme weather conditions.

    b. All utilities should implement procedures requiring a timely annual (each Fall) review of unit equipment and procedures to ensure readiness for cold weather operations.

    c. All utilities should ensure that procedures are implemented to correct defective cold weather protection equipment prior to the onset of cold weather.

    d. All utilities should maintain insulation integrity and heat tracing systems in proper working order. Generating unit control systems and equipment essential to cold weather operations should be included in a correctly managed preventive maintenance program.

    e. Additional training programs for plant personnel on the emergency cold weather procedures, including periodic drills, should be implemented by each responsible utility.

23. In 2011, the Federal Energy Regulatory Commission ("FERC") and the North American Electrical Regulatory Corporation ("NERC") issued a report ("the FERC 2011 Report") following the weather event of February 2011 and implored the Power Generators and the Power Transmission/Distribution Companies to prepare for the winter season with the "same sense of urgency" and priority as they prepare for the summer peak season.[3] The FERC 2011 Report issued numerous recommendations which if followed could have avoided entirely or substantially minimized the dire consequences of another and foreseeable winter event.[4] Tellingly, the FERC Report referred to the PUCT 1989 Report and noted that "the majority of

---

[2] PUCT 1989 Report at 7. 28
[3] FERC 2011 Report at 197.
[4] *See e.g.* FERC 2011 Report at 197-207

the problems generators experienced in 2011 resulted from failures of the very same type of equipment that failed in the earlier event" and "in many cases, these failures were experienced by **the same generators.**"[5] The FERC recommendations were ignored by the Defendants, and instead the Defendants put profits over the safety of the Texans, including Plaintiffs.

24. In September 2014, NERC issued another report following the January 2014 polar vortex that affected Texas and again resulted in power outages that affected Texas consumers. Once again, recommendations were issued and observations were made, including many of the same recommendations that had been issued in 1989 and 2011, including "review and update of power plant weatherization programs."[6] Rather than focus on safety after the 2014 Polar Vortex, the Defendants focused on how much money they could make during winter events. For instance, one of the Defendant's executives bragged to investors during a November 2014 earnings call that "to the extent we get another polar vortex or whatever, absolutely, **we'll be opportunistic and take advantage of those conditions.**"[7]

25. The February 2021 winter storm clearly shows what the Defendants had already known for decades—that corrective actions taken, if any, were not adequate. The wrongful conduct of the Defendants have had catastrophic consequences, and caused Plaintiffs to suffer death, personal injuries, damage to their residential and/or business property, and/or have substantially interfered with the use and enjoyment of Plaintiffs' residential and/or business property.

## VII.    CAUSES OF ACTION

**Count One: Negligence & Gross Negligence**

26. Plaintiffs incorporate the foregoing herein as if set forth at length.

---

[5] FERC 2011 Report at 178 (emphasis supplied)
[6] NERC Polar Vortex Review 2014 at iii-iv and 19-20.
[7] *See https://www.texastribune.org/2021/02/22/texas-power-grid-extreme-weather/* (emphasis supplied)

Certified Document Number: 94580698 - Page 8 of 19

27. Plaintiffs sustained injuries and damages because of Defendants' individual and collective negligence and gross negligence for the following reasons:

   a. Failure to comply with applicable safety standards, customs, and practices to make sure they weatherized their facilities and equipment to prevent disasters like the one complained of herein;

   b. Failure to properly supervise its facilities and equipment to make sure they weatherized their facilities and equipment to prevent disasters like the one complained of herein;

   c. Failure to properly train their workers and provide requisite training for their workers and those on they facilities and equipment to make sure they weatherized their facilities and equipment to prevent disasters like the one complained of herein;

   d. Failure to protect all Texans from a loss of power during an extreme winter storm such as the one complained of herein by assuring that their facilities and equipment were weatherized and prepared to prevent disasters like the one complained of herein;

   e. As to the Power Transmission/Distribution Companies, failure to "make all reasonable efforts to prevent interruptions of service." 16 Tex. Admin. Code Sec, 25.52;

   f. As to the Power Transmission/Distribution Companies, failure to "make reasonable provisions to manage emergencies resulting from failure of service." 16 Tex. Admin. Code Sec. 25.52; and

   g. Other acts deemed negligent and grossly negligent.

28. The Power Generators and the Power Transmission/Distribution Companies committed various acts and omissions of negligence and gross negligence, which both individually and collectively, were the proximate cause of the occurrence, property losses, illnesses and death, substantial interference with the use and enjoyment of property, and damages sustained by Plaintiffs as set forth above.

29. The Power Generators and the Power Transmission/Distribution Companies' conduct as described herein, when viewed objectively from the standpoint of the Defendants, at the time of its occurrence, involved an extreme degree of risk, considering the extreme degree of risk and probability and magnitude of the potential harm to others and of which the Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

Certified Document Number: 94580698 - Page 9 of 19

30. The Power Generators and the Power Transmission/Distribution Companies consciously disregarded the safety of all Texans as described herein and for which Plaintiffs are entitled to punitive damages.

31. As a result of the Power Generators and the Power Transmission/Distribution Companies' negligence and gross negligence, Plaintiffs incurred property damages, substantial interference with the use and enjoyment of property, out of pocket losses, medical expenses in the past and future, lost wages and lost future earning capacity, extreme mental anguish and suffering, and other injuries and damages. In the all too numerous instances where Texans lost a loved one in this storm, they are entitled to recover for lost earning capacity, lost care, maintenance, services, support, advice, and counsel that the loved one would have provided them, mental and emotional anguish, pain, and suffering lost love, companionship, comfort, and society, and lost inheritance, including what the loved one would likely have saved and left to them if he or she had lived a normal expected lifetime.

32. The loved one's estate is entitled to the recovery of damages for what they would have been able to recover if they were alive to bring a lawsuit. Recoverable survival damages include the physical pain and suffering and the mental anguish that they experienced before dying, medical expenses and burial expenses.

## Count Two: Product Liability And Strict Liability

33. Plaintiffs repeat and re-allege each allegation contained above.

34. The Power Generators designed, manufactured, assembled, installed and/or maintained their power generation facilities that caused Plaintiffs' losses, injuries, death and/or damages. Plaintiffs, therefore, invoke the doctrine of strict liability as enunciated in §402A of the Restatement (Second) of Torts and adopted by the Supreme Court of Texas.

35. The Power Generators' facilities were defective in the following respects:

Certified Document Number: 94580698 - Page 10 of 19

a. Power generation facilities were defectively designed, manufactured, assembled, inspected, and tested, from a stability and safety standpoint, so they would not freeze up in cold weather conditions like the 2021 winter storm made the basis of this Petition;

b. Power generation facilities were defective in their design, manufacture, assembly, maintenance and testing because the Power Generators failed to prepare for them to function and provide power to consumers in cold weather conditions like the 2021 winter storm made the basis of this Petition;

c. Power generation facilities failed to provide a safety mechanism to prevent failure in cold weather conditions like the 2021 winter storm made the basis of this Petition:

d. Power generation facilities were generally defective in design, manufacture, maintenance, assembly, and testing because of the failure to have been weatherized to protect against cold weather conditions like the 2021 winter storm and provide continuous electrical power, as alleged in this Petition:

e. Power generation facilities did not implement the suggestions of governmental agencies to weatherize power generation facilities to provide for continuing power production in cold weather conditions like the 2021 winter storm made the basis of this Petition;

f. Power generation facilities were inherently dangerous because they had not been weatherized to allow continued electric power production in cold weather conditions like the 2021 winter storm made the basis of this Petition.; and

g. Power generation facilities were improperly and inadequately tested and inspected by the Power Generators to make sure that they would withstand and continue to produce electric power in cold weather conditions like the 2021 winter storm made the basis of this Petition.

36. It was entirely foreseeable and well known by the Power Generators that incidents involving their facilities, as described herein and made the basis of this Petition, were caused by their generation facilities' defective conditions described herein, where these could and did freeze up during their normal, ordinary, and intended use. The Power Generators knew that if their facilities and equipment froze in severe winter storm conditions like the 2021 winter storm made the basis of this Petition, serious suffering and sustained damage to property, health, and/or loss of life would occur without warning to Texas consumers the consequences of which the Power Generators were aware were substantially certain to result from it.

37. These risks and defects were known by the Power Generators prior to their power generators' design, manufacture and placement into service, which the power generators' failures were the

11

Certified Document Number: 94580698 - Page 11 of 19

proximate cause of Plaintiffs' suffered and sustained damage to the property, health, and/or loss of life of Texas consumers. The Power Generators are each liable to Plaintiffs under common law and the doctrine expressed in the Restatement (Second) of Torts, §402A and §402B.

38. Moreover, a safer alternative design existed at the time the power generation facilities were designed, manufactured, and put into service by the Power Generators. The safer alternative design of simply weatherizing would have absolutely prevented the risk of the suffered and sustained damage to the property, health, and/or loss of life of Texas consumers without substantially impairing the products' utility, functioning and capability. Further, the safer alternative design was economical and technologically feasible at the time the product was actually designed, manufactured, and certainly when it was installed and brought on-line by application of existing or reasonably achievable scientific knowledge.

## Count Three Strict Liability-Abnormally Dangerous Activity

39. The Power Generators and the Power Transmission/Distribution Companies are in the business of manufacturing and supplying electricity and as a result have engaged in and are engaging in an abnormally dangerous activity. As a result, they exposed the public at large and Plaintiffs in particular to a high degree of risk of serious injury and harm if their power generation facilities malfunctioned and/or failed to operate as occurred in February 2021. The Power Generators and the Power Transmission/Distribution Companies' failures were the proximate cause of Plaintiffs suffered and sustained damage to the property, health, and/or loss of life of Texas consumers. The Power Generators and the Power Transmission/Distribution Companies are each liable to Plaintiffs for the harm that has occurred arising from their abnormally dangerous activities.

## Count Four: Negligent Misrepresentation

40. Plaintiffs incorporate the foregoing herein as if set forth at length.

12

Certified Document Number: 94580698 - Page 12 of 19

41. Plaintiffs bring this cause of action against the Power Generators and the Power Transmission/Distribution Companies under the theory of negligent misrepresentation.

42. The Power Generators and the Power Transmission/Distribution Companies individually and through their agents, representatives and/or employees, negligently misrepresented material facts about the power they would supply in that they made such misrepresentations when they knew or reasonably should have known of the falsity of such representations. Alternatively, the Power Generators and the Power Transmission/Distribution Companies made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations. Specifically, the Power Generators and the Power Transmission/Distribution Companies made representations regarding their ability to provide electric power, and never mentioned that that power could be interrupted by an ice storm or extended below-freezing temperatures.

43. Those above misrepresentations were made to the public and to Plaintiffs.

44. Plaintiffs justifiably relied on the Power Generators and the Power Transmission/Distribution Companies' misrepresentations.

45. The Power Generators and the Power Transmission/Distribution Companies' misrepresentations were the proximate cause of Plaintiffs' suffered and sustained damage to their property, health, and/or loss of life

**Count Five: 402b Misrepresentation**

46. All named Power Generators and the Power Transmission/Distribution Companies are liable to Plaintiffs under Restatement (Second) of Torts 402B, adopted by the Texas Supreme Court. Plaintiffs incorporate by reference all preceding paragraphs as if fully stated herein, and further alleges as follows:

    a. The Power Generators and the Power Transmission/Distribution Companies named under this count were engaged in the business of selling electric power;

13

b.  The Power Generators and the Power Transmission/Distribution Companies made public representations of material fact concerning the character and quality of the electric power they were providing;

c.  These representations were not true;

d.  Plaintiffs justifiably relied on the Power Generators and the Power Transmission/Distribution Companies ' representations in purchasing power; and

e.  The Power Generators and the Power Transmission/Distribution Companies' misrepresentations, individually and in concert, were the proximate cause of Plaintiffs' suffered and sustained damage to their property, health, and/or loss of life.

## Count Six: Fraud

47. Plaintiffs incorporate the foregoing herein as if set forth at length.

48. Plaintiffs incorporate by reference all preceding paragraphs as if fully stated here, and further allege as follows.

49. The Power Generators and the Power Transmission/Distribution Companies made representations of material facts concerning the character and quality of the electric power they were providing that were false.

50. The Power Generators and the Power Transmission/Distribution Companies made such representations with knowledge of their falsity and with the intent to induce action on the part of Plaintiffs.

51. Plaintiffs justifiably relied on these representations and acted upon them in receiving the Power Generators and the Power Transmission/Distribution Companies' electric power.

52. The Power Generators and the Power Transmission/Distribution Companies' fraudulent misrepresentations, individually and in concert, proximately caused Plaintiffs' suffered and sustained damage to their property, health, and/or loss of life.

53. Accordingly, the Power Generators and the Power Transmission/Distribution Companies are liable, jointly, and severally, for Plaintiffs' suffered and sustained damage to their property, health, and/or loss of life, including punitive damages.

Certified Document Number: 94580698 - Page 14 of 19

**Count Seven: Civil Conspiracy**

54. Plaintiffs incorporate the foregoing herein as if set forth at length.

55. Plaintiffs bring this cause of action against the Power Generators and the Power Transmission/Distribution Companies under a civil conspiracy theory.

56. The Power Generators and the Power Transmission/Distribution Companies entered into a civil conspiracy and a concert of action to pursue a common design, purpose, and intention.

57. The Power Generators and the Power Transmission/Distribution Companies along with one or more additional persons or entities had a meeting of the minds about a common object or goal to be accomplished or a common course of action.

58. That goal or the course of action used to obtain the goal is unlawful.

59. At least one of the parties to the conspiracy committed an overt unlawful act or course of conduct in furtherance of the conspiracy.

60. Plaintiffs' losses, injury and/or death were the proximate result of this conspiracy.

**Count Eight: Breach Of Continuing Duty To Warn**

61. Plaintiffs incorporate the foregoing herein as if set forth at length.

62. The Power Generators and the Power Transmission/Distribution Companies are liable to Plaintiffs for breaching their continuing duty to warn Plaintiffs of potential weather-related issues that could likely affect the character and quality of the electric power they were providing and cause an interruption in service.

63. The Power Generators and the Power Transmission/Distribution Companies designed, manufactured, tested, marketed, transmitted, delivered and/or sold their electric power. Accordingly, each Defendant was involved in creating the risks associated with the character and quality of the electric power they were providing.

15

Certified Document Number: 94580698 - Page 15 of 19

64. Each of the Power Generators and the Power Transmission/Distribution Companies knew, should have known, or should have discovered risks associated with character and quality of the electric power they were providing that were the result of their design, testing, manufacturing, marketing, transmitting and/or delivering of the electric power.

65. The Power Generators and the Power Transmission/Distribution Companies had a continuing duty to warn Plaintiffs.

66. The Power Generators and the Power Transmission/Distribution Companies breached this duty.

67. The Power Generators and the Power Transmission/Distribution Companies' joint and several breaches of this duty is the proximate cause of Plaintiffs' suffered and sustained damage to their property, health, and/or loss of life.

**Count Nine: Breach Of Express Warranties**

68. Plaintiffs incorporate the foregoing herein as if set forth at length.

69. Plaintiffs bring this cause of action for breach of express warranties against the Power Generators and the Power Transmission/Distribution Companies.

70. The Power Generators and the Power Transmission/Distribution Companies are manufacturers, transmitters and/or sellers of their electric power.

71. The Power Generators and the Power Transmission/Distribution Companies made material affirmative representations about character and quality of the electric power they were providing that were false.

72. Prior to the purchase of electric power service by Plaintiffs, the Power Generators and the Power Transmission/Distribution Companies informed Plaintiffs of the character and quality of the electric power they were providing by expressly warranting to Plaintiffs and others by advertisements, pamphlets, and otherwise that they, including Plaintiffs, could safely and reliably use their electric power service. The Power Generators and the Power

16

Certified Document Number: 94580698 - Page 16 of 19

Transmission/Distribution Companies expressly warranted among other things, one or more of the following:

   a.  The Power Generators and the Power Transmission/Distribution Companies expressly warranted the character and quality of the electric power they were providing was safe and reliable;

   b.  In truth and fact, the electric power the Power Generators and the Power Transmission/Distribution Companies were providing did not conform to these express representations because the character and quality of the electric power they were providing was not safe or reliable;

   c.  Plaintiffs suffered, and will continue to suffer injury, harm, and/or economic losses as alleged herein;

   d.  In purchasing electric power service, Plaintiffs relied on the skill and judgment of the Power Generators and the Power Transmission/Distribution Companies' agents, representatives, and employees, and on the Power Generators and the Power Transmission/Distribution Companies' express warranties described above;

   e.  When Plaintiffs purchased electric power service, the Power Generators and the Power Transmission/Distribution Companies' express warranties concerning it were not true, and their electric power service was defective; and

   f.  The Power Generators and the Power Transmission/Distribution Companies' breach of express warranties is the proximate cause of Plaintiffs' suffered and sustained damage to their property, health, and/or loss of life.

### Count Ten: Breach Of Implied Warranty Of Fitness For A Particular Purpose

73. Plaintiffs incorporate the foregoing herein as if set forth at length.

74. The Power Generators and the Power Transmission/Distribution Companies knew, or should have known, of the particular purpose for which Plaintiffs required their electric power service because the only purpose for which the Power Generators and the Power Transmission/Distribution Companies' manufactured, sold, distributed, marketed and/or prescribed the electric power they were providing was for safe and reliable electric power;

75. The Power Generators and the Power Transmission/Distribution Companies impliedly warranted that the electric power they were providing was safe and reliable electric power, the purpose for which it was designed, and was in fact suitable for the use made by Plaintiffs.

76. In purchasing and using electric power service, Plaintiffs relied on the Power Generators and the Power Transmission/Distribution Companies' skill and judgment and the implied warranty of fitness for the purpose for which Plaintiffs purchased their electric power service.

77. The electric power that the Power Generators and the Power Transmission/Distribution Companies were providing was not fit for use for its intended use because it was and is unreasonably unsafe, unreliable, and unfit for the ordinary purposes for which it was intended and used.

78. The Power Generators and the Power Transmission/Distribution Companies' breach of the implied warranty of fitness, more particularly set forth above, proximately caused Plaintiffs' suffered and sustained damage to their property, health, and/or loss of life.

## VIII.    JURY TRIAL DEMANDED

79. Plaintiffs hereby demand a trial by jury and have paid the jury fee.

## IX.    PRAYER

80. Plaintiffs pray for relief and judgment against the Power Generators and the Power Transmission/Distribution Companies as follows:

   a.  Compensatory damages;

   b.  Actual damages;

   c.  Consequential damages;

   d.  Exemplary damages;

   e.  Interest on damages (pre- and post-judgment) in accordance with law;

   f.  Costs of court;

   g.  Attorneys' fees; and

   h.  Such other and further relief to which Plaintiffs are entitled.

Certified Document Number: 94580698 - Page 18 of 19

Respectfully submitted,

**BRENT COON & ASSOCIATES**

*/s/ Brent W. Coon*
BRENT W. COON
State Bar No. 04769750
Email: brent@bcoonlaw.com
ROBERT A. SCHWARTZ
State Bar No. 17869670
Email: bob.schwartz@bcoonlaw.com
SIDNEY F. ROBERT
State Bar No. 24074968
Email: sidney.robert@bcoonlaw.com
300 Fannin, Suite 200
Houston, Texas 77002
Telephone: (713) 225-1682
Facsimile: (713) 225-1785


**ROBINS CLOUD LLP**

*/s/ Bill Robins*
Bill Robins
TBA No. 17083790
Email: robins@robinscloud.com
Ian P. Cloud
TBA No. 00783843
Email: icloud@robinslcod.com
Robins Cloud LLP
2000 West Loop South, 22nd Floor
Houston, TX 77027
Telephone: (713) 650-1200
Facsimile: (713) 650-1400 fax

**ATTORNEYS FOR PLAINTIFFS**

Certified Document Number: 94580698 - Page 19 of 19



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   March 3, 2021

Certified Document Number:      94580698 Total Pages:  19

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**